<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| _____ : | Hon. Stanley R. Chesler |
| STX II, LLC, : | Civil Action No. 09-1549 |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | OPINION |
| UNION TELECARD ALLIANCE, LLC, : | |
| and IDT TELECOM, INC., : | |
| : | |
| Defendants. : | |
| _____: | |

**<u>CHESLER, U.S.D.J.</u>**

This matter comes before the Court upon the motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, by third party Plaintiffs Union Telecard Alliance, LLC and IDT Telecom, Inc. (collectively, the "TPPs"). The Court heard oral argument on the motion on May 2, 2011. For the reasons stated below, the motion will be granted.

The TPPs move for partial summary judgment on the counterclaims asserted by third party Defendants Diamond Phone Card, Inc., Nasreen Gilani, and Samsuddin Panjwani (collectively, the "TPDs"). The TPDs have asserted five counterclaims: 1) breach of contract by failure to provide the best rates; 2) detrimental reliance on a guarantee; 3) breach of contract by failure to satisfy the debts of King Distributors; 4) tortious interference with contract; and 5) breach of contract by deactivating calling cards.

The TPPs contend that the counterclaims all arise out of the former business operations of Diamond Phone Card, Inc., which bought and sold phone cards, and that Diamond sold all these

claims to an entity named STi.  The TPPs argue that, therefore, the TPDs have no remaining legal interest in the counterclaims they have asserted, and therefore lack standing to bring these claims.

In opposition, the TPDs contend that "Diamond did not surrender any claims or causes of action related to calling cards distributed by UTA when it sold its intellectual property."  (TPD's Opp. Br. 21.)  The TPDs point to the provisions of the Asset Purchase Agreement dated February 27, 2009 (the "Agreement").  The Agreement provides that the sellers, the TPDs, convey to the purchaser, STi Prepaid, LLC, "[a]ll Intellectual Property owned or used in connection with the Business."  (Zielinski Dec. Ex. I at § 2.01(a).)  The Agreement also provides for the transfer of the following:

> Except for the Excise Tax Claim, all claims, causes of action, rights of recovery and rights of set-off of any kind pertaining to or arising out of and accruing to the benefit of Seller and relating to the Purchased Assets.

(Id. at § 2.01(c).)

The brief submitted by the TPDs does not persuade this Court that the Agreement did not cover calling cards distributed by UTA.  The brief does no more than make the assertion in one conclusory heading.  The TPDs do offer the 30(b)(6) deposition testimony of Samsuddin Panjwani, who testified that Diamond did not sell anything but its "labels."  (TPD's Opp. Br. 22.) The TPDs do not define what Mr. Panjwani meant by the word "labels," but, given the provisions of the Agreement, it would appear that he meant the trademarks and intellectual property associated with the phone card business.

This testimony raises no material factual issue.  The language of the Agreement is clear and unambiguous.  The seller conveyed <u>all</u> intellectual property used in connection with the phone card business to the purchaser.  Given that the scope of the sale of intellectual property

2

was total, the only way that TPDs could persuade that the UTA card business lies outside the scope of this provision would be to have provided evidence that the UTA cards were not associated with any intellectual property. The TPDs have offered no such evidence, and not even an explanation, to support the proposition that the UTA cards were not associated with any intellectual property, such that this part of the intellectual property of the business was not conveyed by the Agreement.

  There is no dispute as to the existence or contents of the Asset Purchase Agreement. The clear language of the Agreement states that the TPDs conveyed all intellectual property used in connection with their business, as well as all claims pertaining to those purchased assets. The TPDs have offered no reason for this Court not to conclude that, under the Asset Purchase Agreement, "all" means all, and that the intellectual property associated with all calling cards, including the UTA cards, was conveyed to the purchaser.

  The sole remaining question for this Court is whether the counterclaims asserted by the TPDs pertain to or relate to the intellectual property conveyed under the Asset Purchase Agreement. The First Counterclaim asserts that Diamond contracted with UTA and IDT for the purchase of calling cards, and that UTA and IDT breached a provision of this contract by failing to provide the best credit and discount rates. This claim pertains to, or relates to, the calling cards Diamond purchased from UTA and IDT, and the intellectual property associated with those calling cards. The Agreement conveyed the right to assert this counterclaim.

  The Second and Third Counterclaims assert that UTA and IDT promised to guarantee the debts of King Distributors to Diamond and failed to do so. The Amended Answer asserts that King Distributors purchased calling cards from Diamond. (Am. Answ. ¶ 172.) A guarantee of

debts incurred by the purchase of calling cards from Diamond pertains to, or relates to, the calling cards Diamond purchased from UTA and IDT, and the intellectual property associated with those calling cards. The Agreement conveyed the right to assert these counterclaims.

The Fourth Counterclaim asserts that UTA and IDT tortiously interfered with contracts Diamond had with customers by deactivating calling cards. This claim pertains to, or relates to, the calling cards Diamond purchased from UTA and IDT, and the intellectual property associated with those calling cards. The Agreement conveyed the right to assert this counterclaim.

The Fifth Counterclaim asserts that UTA and IDT breached its contract with Diamond by deactivating calling cards. This claim pertains to, or relates to, the calling cards Diamond purchased from UTA and IDT, and the intellectual property associated with those calling cards. The Agreement conveyed the right to assert this counterclaim.

In sum, the undisputed evidence before this Court shows that Diamond conveyed all intellectual property associated with its calling card business, as well as all claims relating to that intellectual property. The combination of conveying all intellectual property and conveying all claims relating to that intellectual property leads to the inference that the scope of the Agreement provision conveying the right to assert claims is very broad. The TPDs have offered no basis for this Court to construe the clear language of the Agreement so as to narrow this scope in any relevant way, or for this Court to conclude that the counterclaims do not fall within the scope of this provision. This Court finds that, pursuant to the Agreement, the TPDs have conveyed the rights to assert all of the five counterclaims asserted in the Amended Answer to STi.

The Constitution limits the jurisdiction of the federal courts to cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). A party bringing a claim must have

constitutional standing to assert that claim, and one of the three essential elements of standing is that the plaintiff must have "suffered an 'injury in fact' – an invasion of a legally protected interest." Id. at 560. As to these three elements of standing, the Supreme Court has stated:

> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

Id. at 561. Thus, at summary judgment, the TPDs bear the burden of proof of that they have suffered an invasion of a legally protected interest. As the moving party without the burden of proof of standing, the TPPs initially need to do no more than show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to offer evidence in support of its case.

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

Such is the case here. The TPPs asserted that the TPDs have no evidence of standing to assert their counterclaims. The burden shifted to the TPDs to establish standing, an essential element of their case. They have failed to offer any such evidence. This constitutes a complete failure of proof. The TPDs lack standing to assert any of their asserted counterclaims.

Lastly, while the Court need not reach any other issues, the Court observes that it takes a certain quantum of *chutzpah* for the TPDs to have asserted the counterclaims relating to the deactivation of the calling cards.  The TPDs do not dispute that UTA's "Activation Invoices" stated that UTA retained the right to deactivate the cards it had sold to Diamond at any time. (Am. Answ. ¶ 17(f)).  UTA did not exercise that right while Diamond was making payments on its debts to UTA.  After Diamond executed the Asset Purchase Agreement, UTA sent Diamond a demand letter seeking immediate payment of the $1.16 million debt.  (TPD's Resp. 56.1 Stmt. ¶ 73.)  Shortly thereafter, UTA began to deactivate the cards.  (Id. at ¶ 78.)  In view of all these facts, filing counterclaims against UTA relating to the deactivation appears especially bold. Moreover, to the extent that anyone has a right to assert a cause of action against UTA relating to the deactivation, that right would lie with the ultimate purchasers of the cards, not with Diamond.

The TPPs have shown that they are entitled to judgment as a matter of law.  The motion for summary judgment will be granted, and Judgment on all counterclaims in the Amended Answer shall be entered in favor of the TPPs.

                                                       /s Stanley R. Chesler
                                                       STANLEY R. CHESLER. U.S.D.J.

Dated: May 4, 2011